UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBERS OF<br>DEBORAH L. BOARDMAN<br>UNITED STATES DISTRICT JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-7810<br>Fax: (410) 962-2577<br>MDD_DLBChambers@mdd.uscourts.gov |

September 3, 2021

LETTER TO COUNSEL

    RE:    *Trena Sue Y. v. Kijakazi*
              Civil No. DLB-20-1075

Dear Counsel:

On March 7, 2014, the Social Security Administration ("SSA") denied plaintiff's claims for Disability Insurance Benefits ("DIB"). Tr. 108–11, ECF 13-5. On February 25, 2020, after this Court had remanded the case twice, an administrative law judge ("ALJ") determined again that plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame and denied her claims for DIB. Tr. 1163–1189, ECF 13-15. On April 27, 2020, plaintiff petitioned this Court to review the SSA's February 25, 2020 Decision and Order. ECF 1. I have considered the parties' cross-motions for summary judgment, their memoranda in support, and plaintiff's response. ECF 17, 17-2, 18, 18-1, & 19. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the denial if the SSA employed correct legal standards in making findings supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA yet again for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

    **A. Background**

Initially, in response to claims for benefits that plaintiff filed in September 2013, an ALJ determined that she was not disabled within the meaning of the Social Security Act during the relevant time frame. *See* Order 3, ECF 21 in *Trena Y. v. Colvin*, No. JMC-15-3338 (D. Md. Jan. 24, 2017). This Court reversed the ALJ's opinion and remanded the case to the Commissioner because "the ALJ's step-three analysis was deficient." *Id*. The Appeals Council vacated the ALJ's decision and remanded for another hearing, in accordance with this Court's January 24, 2017 Order. Tr. 883–86, ECF 13-10. Following a November 29, 2017 hearing, the ALJ concluded again that plaintiff was not disabled and denied her claims for DIB in a December 11, 2017 decision. Tr. 777–802, ECF 13-9. Plaintiff filed a second petition for judicial review, and this Court concluded that "the ALJ's RFC assessment [ran] afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)." *See* Opinion 2, ECF 22 in *Trena Y. v. Berryhill*, Civil No. SAG-18-938 (D. Md. Apr. 18, 2019). On April 18, 2019, the Court reversed and remanded the case a second time. *See* Order, ECF 23 in *Trena Y. v. Berryhill*, Civil No. SAG-

*Trena Y. v. Kijakazi*
Civil No. DLB-20-1075
September 3, 2021
Page 2

18-938 (D. Md. Apr. 18, 2019). The Appeals Council vacated the Commissioner's decision and remanded the case to an ALJ for a third hearing, in accordance with this Court's April 18, 2019 Order. Tr. 1246–49, ECF 13-16.

On February 3, 2020, an ALJ held a hearing. Tr. 1166. On February 25, 2020, the ALJ denied plaintiff's claims for benefits. *Id.* at 1163–89. The ALJ's February 25, 2020 decision constitutes the final, reviewable decision of the SSA. *Id.* at 1164; *see Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 20 C.F.R. § 422.210(a).

The ALJ followed the five-step process for determining whether plaintiff was disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ found that, from July 5, 2010 through June 30, 2014 (her alleged onset date through her date last insured), plaintiff did not engage in substantial gainful activity. Tr. 1168. At step two, the ALJ found plaintiff severely impaired by "anxiety disorder, affective disorder, attention deficit hyperactivity disorder, Raynaud's syndrome, and cervical, thoracic, and lumbar spine degenerative disc disease." *Id.* At step three, the ALJ found that these impairments were not, alone or in combination, equivalent to the severity of any listed impairment. *Id.* at 1169.

Despite plaintiff's impairments, the ALJ determined she retained the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs and never climb ladders, ropes, or scaffolds; [s]he must avoid concentered exposure to extreme cold and pulmonary irritants; the individual is limited to simple and routine work in occupations with specific vocational profiles of two or lower, which are performed in a low stress setting, with low stress being defined as *requiring no fast paced production*, no more that occasional changes in the work routine or work setting, and no greater than occasional simple decision making; finally, the work should not require greater than occasional interaction with supervisors, coworkers, or the general public.

*Id.* at 1172 (emphasis added). After considering the testimony of a vocational expert ("VE") that plaintiff's RFC "limits [her] to sedentary, unskilled work" and that her "past work is precluded," the ALJ determined at step four that plaintiff could not perform her past relevant work as a bookkeeper, greenhouse plant worker, or transcriptionist. *Id.* at 1178–79.

Because plaintiff made a *prima facie* showing of disability, the burden shifted to the Commissioner at step five to show that the plaintiff retained the RFC to perform work available in the national economy and therefore was not disabled within the meaning of the Social Security Act. *Id.* at 1168; *see* 20 C.F.R. §§ 404.1512 & 404.1560(c). Relying on the testimony of the VE, the ALJ determined that plaintiff could "perform the requirements of representative occupations such as . . . Addresser, . . . Cutter/paster, . . . [and] Nut sorter," jobs existing in significant numbers in the national economy. Tr. 1179–80. Therefore, the ALJ concluded plaintiff was not disabled. *Id.* at 1180.

*Trena Y. v. Kijakazi*
Civil No. DLB-20-1075
September 3, 2021
Page 3

On appeal, plaintiff argues that, because the ALJ failed to define "fast paced production" in the hypothetical posed to the VE, "it would have been impossible for the VE to assess whether a person with Plaintiff's limitations could maintain the pace proposed" and, consequently, the VE's testimony did not provide substantial evidence that the plaintiff could perform the work the ALJ determined she could perform. Pl.'s Mem. 10 & 12. Stated differently, the ALJ's step-five determination was not supported by substantial evidence. *Id.* Plaintiff further asserts that the ALJ's failure to define "fast paced production" prevents this Court from meaningfully reviewing the ALJ's decision. *Id.* at 13; *see* Pl.'s Resp. 7. In addition, plaintiff argues that the ALJ's decision again fails to comply with the *Mascio* requirements. Pl.'s Mem. 17. I find the ALJ precluded judicial review by inadequately explaining the basis for his RFC. Accordingly, I remand but express no opinion as to plaintiff's ultimate entitlement to benefits. I need not reach plaintiff's *Mascio* argument.

**B. Discussion**

In conducting substantial evidence review, courts look "to an existing administrative record and [ask] whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citation omitted). Thus, agency conclusions must be stated in terms the Court can understand for the Court to conduct substantial evidence review. In *Thomas v. Berryhill*, the Fourth Circuit held that the ALJ's RFC assessment limiting the plaintiff to work that did not "require[e] a production rate or demand pace" frustrated judicial review because the ALJ did not provide the Court with "enough information to understand what those terms mean[t]." 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019). It reasoned that, with "production rate" and "demand pace" undefined, it was "difficult, if not impossible, for [the Court] to assess whether their inclusion in Thomas's RFC [wa]s supported by substantial evidence." *Id.* Expressing no opinion as to whether the RFC findings were correct, the Court remanded for "a clearer window into" the ALJ's reasoning. *Id.* at 312 n.5 ("Without further explanation, we simply cannot tell whether the RFC finding—particularly the portion restricting Thomas to jobs that do not require a 'production rate' or 'demand pace'—properly accounts for [the plaintiff's] moderate limitations in concentration, persistence, or pace. On remand, the ALJ will need to establish for how long, and under what conditions, [the plaintiff] is able to focus . . . and stay on task at a sustained rate."). And, while the *Thomas* Court provided three additional bases for remand, the Fourth Circuit subsequently has remanded solely for an ALJ's failure to define ambiguous terms in the RFC determination. *See, e.g.*, *Perry v. Berryhill*, 765 F. App'x 869, 873 (4th Cir. 2019).

Here, the ALJ concluded in the RFC that plaintiff could perform "simple and routine work" in a "low stress setting," that is, a setting "*requiring no fast paced production*." Tr. 1172. The ALJ also used the term "fast paced production" in his hypothetical to the VE. Plaintiff argues the ALJ's use of "fast paced production" in the RFC determination and hypothetical to the VE created two related errors. First, plaintiff contends the ALJ's step-five determination was not supported by substantial evidence because the ALJ's failure to define "fast paced production," coupled with that term's omission from the regulations and the Dictionary of Occupational Titles ("DOT"), made it unclear whether the ALJ and the VE shared the same understanding of the limitation set by the ALJ and whether the use of the undefined term

prevented the VE from providing a meaningful assessment to support the ALJ's determination. Pl.'s Mem. 10–12.  Second, plaintiff argues the use of the ambiguous term places the RFC determination beyond meaningful review.  *Id.* at 13; *see* Pl.'s Resp. 7.

Whether the alleged ambiguity arose in the RFC assessment or the hypothetical is a distinction without a difference because the ALJ used the same term in the hypothetical and in the RFC discussion.  *See Ursula G. v. Berryhill*, Civil No. SAG-18-1841, 2019 WL 2233978, at *2 (D. Md. May 23, 2019) (noting a "deficient RFC assessment would also infect the hypothetical based on that assessment").  Moreover, even if "the VE's testimony does not evince any confusion about the terms of the hypothetical, the Court has an independent duty to determine if the ALJ supported h[is] findings with substantial evidence." *Geneva W. v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-18-1812, WL 3254533, at *3 (D. Md. July 19, 2019) (citing 42 U.S.C. § 405(g)).  In light of *Thomas*, this Court cannot determine whether the ALJ's findings were supported by substantial evidence if the ALJ employed an ambiguous term in the RFC or the hypothetical.  *See id.*

The Commissioner argues that the ALJ did not err in "not expressly defining the phrase *no fast paced production*" because "[t]he VE readily understood these terms at the hearing and Ms. Yoder's attorney made no objection and asked no question regarding the meaning of these terms." Def.'s Mem. 9 (citing Tr. 1210–13).  Defendant insists "the ALJ sufficiently explained his conclusions regarding the mental RFC finding and did not leave this Court to guess about how he arrived at his conclusions."  *Id.* at 10.

In addition, the Commissioner attempts to distinguish *Thomas* on two grounds.  First, the Commissioner argues that the Court's lack of understanding of "the terms at issue in *Thomas* (i.e., *production rate or demand pace*) . . . was only one of four factors that, '[c]ombined, . . . frustrate[d] [the court's] ability to conduct meaningful appellate review[.]'"  *Id.* at 6 (quoting *Thomas*, 916 F.3d at 312).  Second, the Commissioner contends that "the ALJ gave a clear window into his reasoning and sufficiently explained how he reached the conclusion that Ms. Yoder would be limited to, *inter alia*, 'no fast paced production' work" by "discuss[ing] how specific evidence in the record supported the need for the limitation included" and "specifically explain[ing] that a limitation regarding the pace of the work environment was required due to Ms. Yoder's anxiety symptoms."  *Id.* at 7 & 8 (citing Tr. 1172).

The Commissioner also attempts to distinguish *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019), where "the Fourth Circuit found that it was 'difficult, if not impossible, to evaluate whether restricting [the claimant] to a "non-production oriented work setting" properly accounted for [the claimant's] well-documented limitations in concentration, persistence, and pace.'" Def.'s Mem. 7 n.3.  Defendant argues that "the limitation at issue in *Perry* did not expressly refer to pace, whereas the ALJ's limitation of Ms. Yoder to *no fast paced production* in the instant case clearly accounts for her difficulties in maintaining concentration, persistence, *or pace*."  *Id.*

The Commissioner's arguments that the VE understood the meaning of "fast paced production" misses the mark.  It is the *Court's* understanding of the term that is critical to meaningful judicial review.  *See Thomas*, 916 F.3d at 312.  Significantly, "[d]ifferent individuals

can have different conceptions of what work is or is not 'fast.'" *Ginger N. v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-18-1830, 2019 WL 1903548, at *4 (D. Md. Apr. 29, 2019) (quoting *Crocetti v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-17-1122, slip op. (D. Md. June 6, 2018)). The ALJ did not define the term and the VE did not explain what he understood the term to mean. The Court therefore cannot discern the VE's understanding of the term. Absent an explanation of the VE's understanding of the term "fast paced production," the Court cannot evaluate the sufficiency of the limitation.

In any event, I am not convinced the VE shared the ALJ's understanding of the term. The Commissioner points to statements by the ALJ clarifying why plaintiff, who had difficulty maintaining pace, could perform only work "requiring no fast paced production." Def.'s Mem. 7 & 8 (citing Tr. 1172). These statements did not explain to the VE what would qualify as work "requiring no fast paced production." Without that explanation, the VE did not necessarily base her conclusion that plaintiff could work as an addresser, cutter/paster, or nut sorter on the ALJ's understanding of "fast paced production."

Moreover, without an explanation from the ALJ of what would qualify as work "requiring no fast paced production," the Court cannot evaluate whether substantial evidence supported the ALJ's determinations that work as an addresser, cutter/paster, or nut sorter did not require any fast paced production and that plaintiff could perform such jobs. *See Thomas*, 916 F.3d at 312; *Perry*, 765 F. App'x at 872. In this regard, the Commissioner's attempt to distinguish *Thomas* and *Perry* is not persuasive. Even though it is true other factors also prevented the *Thomas* Court from meaningfully reviewing the ALJ's decision, the undefined terms nonetheless impeded meaningful review. And, as discussed, although the ALJ stated why the plaintiff could not perform work "requiring no fast paced production," his references to her difficulties maintaining pace provided no better understanding of what the term meant than the Court had in *Thomas* or *Perry*.

Indeed, the term used here, "fast paced production," is directly analogous to the terms in *Thomas* ("production rate" or "demand pace") and *Perry* ("non-production oriented work setting"), both in form and defect. The Commissioner does not argue the regulations, the DOT, or the ALJ's decision define "fast paced production." *See Thomas*, 916 F.3d at 312. He also does not explain how the reason for plaintiff's limitation to work "requiring no fast paced production" clarifies any ambiguity in what constitutes "fast paced production." The Commissioner likewise does not suggest the ALJ established the pace at which plaintiff still can perform work or the pace at which the jobs the VE proposed must be performed, facts necessary to the determination of whether plaintiff can perform such jobs. *See Thomas*, 916 F.3d at 312 n.5 (ordering ALJ to determine on remand "for how long, and under what conditions, [plaintiff] is able to 'focus . . . attention on work activities and stay on task at a sustained rate'"). Because, as in *Thomas*, the ALJ's utilization of "fast paced production" does not provide me with "enough information to understand what th[]e term[] mean[s]," it is "difficult, if not impossible" to apply the term to assess whether the ALJ's decision was supported by substantial evidence. *See* 916 F.3d at 311–12; *see also Perry*, 765 F. App'x at 872. Therefore, remand is appropriate. *See Thomas*, 916 F.3d at 311–12; *see also Perry*, 765 F. App'x at 872. Accordingly, I remand for further explanation and a "clearer window" into the ALJ's reasoning.

*Trena Y. v. Kijakazi*
Civil No. DLB-20-1075
September 3, 2021
Page 6

     For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 17, is denied, and defendant's motion for summary judgment, ECF 18, is denied.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is reversed in part due to inadequate analysis.  The case is remanded for further proceedings in accordance with this opinion.

     Despite the informal nature of this letter, it should be flagged as an opinion.  A separate order follows.

                                                        Sincerely yours,

                                                             /s/

                                                   Deborah L. Boardman
                                                 United States District Judge

Case 1:20-cv-01075-DLB   Document 20   Filed 09/03/21   Page 6 of 6